IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| JENNIFER ELIZABETH MELERSKI, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | Civil Action No: |
| v. ) | |
| ) | |
| SOUTHERN VIRGINIA MENTAL HEALTH) | |
| INSTITUTE / COMMONWEALTH OF ) | |
| VIRGINIA, ) | |
| ) | |
| Serve: Director William Cook ) | |
| 382 Taylor Drive ) | |
| Danville, VA 24541-4023 ) | |
| ) | |
| ) | |
| and ) | |
| ) | |
| VIRGINIA DEPARTMENT OF ) | |
| BEHAVIORAL HEALTH AND ) | |
| DEVELOPMENTAL SERVICES / ) | |
| COMMONWEALTH OF VIRGINIA, ) | |
| ) | |
| Serve: Director Jack Barber ) | |
| 1220 Bank Street ) | |
| Richmond, VA 23219 ) | |
| ) | |
|     Defendants. ) | |

## COMPLAINT

The above-named Plaintiff, Jennifer Elizabeth Melerski, Psy.D., by counsel, states as her Complaint against Defendants, Southern Virginia Mental Health Institute / Commonwealth of Virginia, and Virginia Department of Behavioral Health

1

and Developmental Services / Commonwealth of Virginia (hereinafter "SVMHI"), the following:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter as it arises from the federal questions presented by Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act ("PDA"), the Civil Rights Act of 1991 and the Lilly Ledbetter Fair Pay Act of 2009 ("Fair Pay Act"), as codified under 42 U.S.C. §§2000e, *et seq.* ("Title VII"); the Equal Pay Act of 1963, as codified under 29 U.S.C. §§201 *et seq.* ("EPA"); the Americans with Disabilities Act, as codified under Title 42 U.S.C. §§ 12101 *et seq.*, and the ADA Amendments Act of 2008 ("ADA"). *See* 28 U.S.C. § 1331; 28 U.S.C. §1343(a); 42 U.S.C. §2000e-5(f); 42 U.S.C. §12117(a).

2. Due to its contacts within the Commonwealth of Virginia, SVMHI avails itself to the jurisdiction of this Court. Venue is appropriate as the acts and/or omissions of SVMHI from which the cause of action arises, occurred in Danville, which is within the Western District of Virginia. *See* 28 U.S.C. §1391(b)(2).

3. Plaintiff timely filed a charge with the U.S. Equal Employment Opportunity Commission (Charge No. 438-2014-00673), received a Dismissal and Notice of Rights from the U.S. Department of Justice, Civil Rights Division, dated July 6, 2015, and files this action within 90 days of receipt of that notice.

2

## II. FACTUAL BACKGROUND

4. Dr. Melerski is a female and current resident of Mebane, North Carolina.

5. Dr. Melerski's formal educational degrees consist of a Psy.D. in Clinical Psychology obtained from Rutgers, The State University of New Jersey, a Psy.M. in Clinical Psychology obtained from Rutgers, The State University of New Jersey, a M.S.Ed. in Counseling Psychology, obtained from Fordham University, and a B.S. in Psychology, obtained from Fordham University.

6. At the time of her termination from employment from SVMHI in June of 2013, Dr. Melerski was employed as the Director of Psychology and Forensic Coordinator for Civilly Committed Patients of SVMHI, located at 382 Taylor Drive, Danville, VA 24541.

7. SVMHI is an inpatient mental health service provider responding to patients throughout the southern portion of the Commonwealth of Virginia. SVMHI is a Joint Commission facility operated by the Virginia Department of Behavioral Health and Developmental Services / Commonwealth of Virginia.

8. Dr. Melerski began her employment with SVMHI as a Forensic Unit Administrator in October of 2005. At the time of her employment, her salary was approximately $52,800 annually.

9. Dr. Melerski performed her duties faithfully, diligently, and with competence during the entire length of her employment with SVMHI.

3

10. Upon information and belief, prior, during and subsequent to Dr. Melerski's employment, SVMHI instituted a discriminatory pay scheme whereby male employees were paid more than female employees.

11. Upon information and belief, in 2005, Dr. Melerski received a lower salary than at least one male counterpart who had less education, less training and less onerous job duties than Dr. Melerski.

12. Upon information and belief, Dr. Melerski's starting salary of $52,800 annually was initially disproportionately low in regards to her educational background and experience. While Dr. Melerski attempted to negotiate a higher and more reasonable salary, she was advised that SVMHI was only permitted to provide her with a 10% increase above what she earned at her last employment position. SVMHI's assessment failed to take into account that Dr. Melerski's last employment position was five (5) years prior (in 2000) and that she had completed a significant amount of doctoral level educational coursework, four (4) externships, and an internship since that time.[1] Dr. Melerski was advised that she would be eligible for a significant raise upon the

---

[1] Specifically, when Dr. Melerski was initially offered the SVMHI Forensic Unit Coordinator position in 2005, she had recently completed all of her doctoral coursework and a clinical internship and was considered to be "ABD" (i.e., she had completed all of her doctoral coursework successfully but was working towards the completion of her dissertation). Dr. Melerski's last employment position was with Project Renewal, which required a Masters Degree, with a salary of $48,000. Dr. Melerski left that position in 2000 to pursue to her doctoral degree. Between 2000 and 2005, Dr. Melerski completed all of her doctoral coursework and four different externships, including providing group therapy to middle school girls in an inner city, impoverished district; conducting assessments and treatment at the Bellevue Hospital Forensic Unit; providing individual/couples/group therapy, assessments, and clinical supervision over three (3) years at the Rutgers University College Counseling Center; and providing therapy at the Psychological Clinic at the Graduate School of Applied and Professional Psychology), as well as an APA accredited one year internship (a joint program through the Bureau of Prisons Medical Center in Butner, NC and UNC Chapel Hill, School of Medicine with additional placement at Dorothea Dix Hospital Forensic Unit).

completion of her dissertation.

13. In October of 2006, Dr. Melerski successfully defended her dissertation and earned her doctoral degree of Psy.D. in Clinical Psychology. At this time, Dr. Melerski again received an increase in job duties and responsibilities, including but not limited to, testifying in courtroom proceedings with the supervision of a licensed Psychologist. Again, Dr. Melerski did not receive any increase in salary despite her requests for the same.

14. In July of 2010, Dr. Melerski earned her License to Practice as a Clinical Psychologist from the Commonwealth of Virginia Department of Health Professions. At this time, Dr. Melerski received a significant increase in job duties and responsibilities, including but not limited to, testifying in courtroom proceedings without the supervision of a licensed Psychologist. Again, Dr. Melerski did not initially receive any increase in salary despite her requests for the same. Instead, months later, on or around February of 2011, Dr. Melerski received a paltry increase of approximately 8%.

15. In addition, upon information and belief, Dr. Melerski's patient case load rose dramatically during this time period, again increasing her job duties and responsibilities with no corresponding increase in pay.

**Dr. Melerski Promotion:**

16. In January of 2012, Dr. Melerski was promoted to the Director of Psychology/Forensic Coordinator at SVMHI.

17. Dr. Melerski inexplicably did not initially receive a salary increase concurrent

5

with this promotion even though the promotion required extensive additional job duties compared to her previous position.

18. In addition, upon information and belief, SVMHI did not hire a full replacement to fill Dr. Melerski's former position after Dr. Melerski received her promotion. Rather, SVMHI reorganized the staff in a way which ultimately resulted in removing a half time psychologist from the staff of the Director of Psychology. SVMHI expected Dr. Melerski to handle the job duties previously held by Dr. Schaefer (the predecessor Director of Psychology/Forensic Coordinator at SVMHI) along with the job duties of a half time psychologist doing forensic evaluations for civilly committed individuals.

19. Indeed, at the time of Dr. Melerski's promotion, the current SVMHI Facility Director, David Lyon, made a joke about saving money in the SVMHI budget due to Dr. Melerski's significantly lower salary than her predecessor and the fact that SVMHI did not hire a full replacement to fill Dr. Melerski's former position. This joke was made directly to Dr. Melerski and other SVMHI employees.

20. Dr. Melerski verbally complained about her disparate salary on repeated occasions to several SVMHI supervisory employees, including but not limited to, direct supervisor and Director of Psychology/Forensic Coordinator Dr. Michael Schaefer, Facility Director David Lyon, Interim Facility Director Robin Crews, and Director of Human Resources Stephanie Haywood.

21. Dr. Melerski received a salary of approximately $66,703 annually in 2011. In

6

June of 2012, approximately six (6) months subsequent to her promotion to Director of Psychology/Forensic Coordinator, and presumably due to her numerous complaints, Dr. Melerski received a 10% raise and her annual salary was increased to approximately $73,373. This raise was not retroactive.

22. Upon information and belief, Dr. Melerski's immediate predecessor, a male, received a salary of approximately $92,579 annually in 2011.

23. Upon information and belief, Dr. Melerski's education, experience, and qualifications, while different, were comparable and materially similar to this predecessor. The job title of Director of Psychology/Forensic Coordinator and job duties of this position were essential identical for both this predecessor and Dr. Melerski.

24. Upon information and belief, the skill, effort and responsibility required by Dr. Melerski in the course of her job duties was substantially equal, if not identical, to that of her predecessor. In addition, the jobs were performed under similar working conditions as the location of the positions and most subordinate employees were identical. Indeed, Dr. Melerski had fewer staff and significantly more job duties than her predecessor due to the failure of SVMHI to hire a replacement for the half-time psychologist previously conducting forensic evaluations under Dr. Schaefer. Additionally, a full time psychological associate was not replaced for an extended period of time and Dr. Melerski was expected to pick up that workload as well.

25. Accordingly, there was no legitimate justification for such a large (almost

7

$20,000 annually) pay disparity.

**Observations of Additional SVMHI Sex Based Pay Disparity:**

26. This was not the first time Dr. Melerski observed an inexplicable pay difference with her employer. Indeed, in 2007, Dr. Melerski interviewed and offered a position to a male psychologist candidate. Even though Dr. Melerski would have been supervising this new employee, Dr. Melerski's employer offered him a salary of approximately $77,000, which was higher than her salary at the time. Dr. Melerski complained about this disparate pay issue to her direct supervisor, Director of Psychology/Forensic Coordinator Dr. Michael Schaefer, and Human Resources Director Pauline Wasiuk. This candidate ultimately chose not to accept the offered position but Dr. Melerski never received a valid explanation for the potential pay differential between herself and a subordinate employee.

27. In addition, Dr. Melerski observed that another male employee, Kevin Earle, whom did not have educational credentials comparable to Dr. Melerski, received a higher annual salary than Dr. Melerski beginning in 2005. When Dr. Melerski began supervising Mr. Earle in 2012, the pay disparity inexplicably continued. Dr. Melerski complained about this disparate pay issue on numerous occasions to Director of Psychology/Forensic Coordinator Dr. Michael Schaefer and Robin Crews (prior to and during Ms. Crews' tenure as SVMHI Interim Director), but the issue was never fully addressed or resolved.

8

28. In addition, in 2012, Dr. Melerski observed that SVMHI Facility Director, David Lyon, received approximately $100,000 in annual salary while his successor, SVMHI Interim Director, Robin Crews, received approximately $30,000 less in salary even though their job duties were identical.

29. In addition, in 2012, Dr. Melerski unsuccessfully advocated for a relatively small pay raise for a female SVMHI subordinate employee, Jane Sirkel. In Dr. Melerski's opinion, Ms. Sirkel received a disproportionately low salary in comparison to a male counterpart and Dr. Melerski was a vocal and engaged advocate in attempting to remedy this concerning trend at SVMHI.

30. Upon information and belief, Dr. Melerski was targeted and retaliated against for her complaints about pay disparity in the work place.

**Dr. Melerski Pregnancy:**

31. In January of 2013, Dr. Melerski became pregnant.

32. Dr. Melerski's pregnancy was physically challenging and the pregnancy was considered a "high risk" pregnancy. Indeed, Dr. Melerski's OB/GYN referred Dr. Melerski to a specialist at the Duke University Hospital Fetal Diagnostic Center.

33. Dr. Melerski's pregnancy caused her to experience certain illnesses/related medical conditions, including but not limited to, severe and debilitating nausea, vomiting, and physical and mental fatigue.

**Director Herr Hired:**

34. Daniel Herr was hired as SVMHI Director in February of 2013.

9

35. Upon information and belief, Facility Director Daniel Herr was made aware of Dr. Melerski's complaints about pay disparity through a variety of avenues, including but not limited to, Director's Herr's conversations with Interim Facility Director Robin Crews. Indeed, Facility Director Herr acknowledged Dr. Melerski's complaints about pay disparity to Dr. Melerski but advised her directly that her salary would not be adjusted further.

**Dr. Melerski Reveals Pregnancy/Requests Accommodations:**

36. Dr. Melerski initially advised her supervisor, SVMHI Director Daniel Herr, of her pregnancy and related health issues on or around March of 2013.

37. During this time frame and on or around March and/or April of 2013, Dr. Melerski also requested certain limited accommodations in regards to her schedule and work duties.

38. Specifically, Dr. Melerski requested permission to arrive to work later than 9:00AM on occasion, when her pregnancy related conditions flared. Dr. Melerski proposed that she would stay at work later on those days to make up for any time she may have missed.

39. In addition, Dr. Melerski requested certain and limited light duty and/or alternative assignments and/or a small amount of additional time to complete her assignments.

40. As an example, as Director of Psychology, Dr. Melerski would most often take the lead in managing physically aggressive patients/patients at a high risk for physically assaulting health care providers and other patients. Dr. Melerski

10

requested that she be permitted to take a lesser role in intervening with these types of patients during her pregnancy and/or that she have another co-worker accompany her during her assessments of these patients.

41. These accommodation requests were not intended to be permanent and were directly related to Dr. Melerski's high-risk pregnancy, related health issues, and duration of the same.

**Dr. Melerski Targeted & Terminated from Employment:**

42. Director Herr initially acquiesced to the above-referenced requests but shortly thereafter falsely accused Dr. Melerski of poor work performance and terminated her employment.

43. On or around March or April of 2013, Director Herr inexplicably reduced Dr. Melerski's job duties. Director Herr advised Dr. Melerski that a portion of her responsibilities as Director of Psychology and Forensic Coordinator, would be given to another SVMHI employee, Cheryl Chittum. Specifically, Dr. Herr advised Dr. Melerski that Dr. Melerski would retain responsibility as SVMHI Forensic Coordinator for Civilly Committed Patients while Ms. Chittum would take over responsibility as SVMHI Forensic Coordinator for Patients Determined Not Guilty By Reason of Insanity. Dr. Melerski's responsibilities as Director of Psychology remained unchanged.

44. Dr. Melerski never requested such a significant reduction in job duties in the context of her requests for accommodations related to her pregnancy. Regardless, her requests for accommodations related to her pregnancy were

11

not intended to be permanent but Director Herr's transfer of Dr. Melerski's job duties was permanent.

45. Dr. Melerski was never advised that her complaints about pay disparity, her pregnancy, related health issues and accommodation requests were an issue until she was unlawfully terminated from employment by Director Herr on or around June 6, 2013, effective on or around June 7, 2013.

46. During Dr. Melerski's disciplinary meeting with Director Herr and Robin Crews on or around June 6, 2013, Director Herr provided Dr. Melerski with several written disciplinary actions.

47. Director Herr issued a Written Notice of a Group II Disciplinary Action (Offense Code 99/Other) directly addressing Dr. Melerski's accommodations: "During the past three months, Jennifer Melerski has demonstrated a pattern of failing to perform assigned work in a timely manner consistent with expectations for a senior administrative staff member."

48. Director Herr simultaneously issued another Written Notice of a Group II Disciplinary Action (Offense Code 56/Insubordination) alleging the following cryptic allegations: "Jennifer Melerski has repeatedly failed to follow her supervisor's explicit instructions regarding chain of command for forensic matters. These actions have undermined the supervisory authority of her colleagues, negatively impacted team functioning and staff morale, compromised clinical care, and resulted in human rights complaints."

49. Upon information and belief, these disciplinary actions had no basis in fact

12

and were retaliatory.

50. The SVMHI "Standards of Conduct" regularly utilized by SVMHI requires that, prior to any disciplinary actions or related termination from employment, a SVMHI employee be given notice of the alleged offenses, an explanation of the evidence in support of the charges, and be provided with a reasonable opportunity to respond.

51. Director Herr did not provide Dr. Melerski with a reasonable opportunity to respond as he issued the above-referenced disciplinary actions on the afternoon of June 6, 2013, and advised that she would be required to respond by 9:00AM on June 7, 2013.

52. Dr. Melerski did respond, in writing, to the issued disciplinary actions. On June 7, 2013, Dr. Melerski submitted her written response in person to Director Herr. Dr. Melerski's response was read by Director Herr in her presence. Director Herr, immediately subsequent to reading the response, complimented Dr. Melerski on her response, thanked her for her eight (8) years of service to the Commonwealth, and then promptly terminated her employment.

53. Dr. Melerski had never before received any sort of disciplinary action prior to the disciplinary actions issued by Director Herr on or around June 6, 2013. Indeed, all of Dr. Melerski's prior annual performance evaluations were positive and no performance issues were noted.

54. Dr. Melerski was not placed on any sort of Performance Improvement Plan at

13

any time.

55. Upon information and belief, other employees who were not pregnant and/or who had not requested accommodations related to their pregnancies and/or who had not complained about pay disparities were permitted to participate in flexible work schedules and were not terminated from employment. Upon information and belief, it was common practice for employees to receive permission to work "flex time" which included working four (4) ten (10) hour days as opposed to five (5) eight (8) hour days or beginning work duties at an earlier or later start time and leaving work correspondingly earlier/later. Indeed, Dr. Melerski had been permitted prior to March of 2013 to utilize a flex time schedule as was necessary.

56. SVMHI unlawfully terminated Dr. Melerski's employment because of her sex and/or pregnancy and/or in retaliation for her complaints about the disparate pay between males and females that was occurring in the workplace, all in violation of Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act ("PDA"), the Civil Rights Act of 1991 and the Lilly Ledbetter Fair Pay Act of 2009 ("Fair Pay Act"), as codified under 42 U.S.C. §§2000e, *et seq.* ("Title VII"); the Equal Pay Act of 1963, as codified under 29 U.S.C. §§201 *et seq.* ("EPA"); the Americans with Disabilities Act, as codified under Title 42 U.S.C. §§ 12101 *et seq.*, and the ADA Amendments Act of 2008 ("ADA"). In addition, SVMHI instituted discriminatory pay practices based upon Dr. Melerski's sex in violation of Title VII of the Civil Rights Act of

14

1964, as amended by the Civil Rights Act of 1991 and the Lilly Ledbetter Fair Pay Act of 2009 ("Fair Pay Act"), as codified under 42 U.S.C. §§2000e, *et seq.* ("Title VII"); the Equal Pay Act of 1963, as codified under 29 U.S.C. §§201 *et seq.* ("EPA").

## COUNT I: SEX DISCRIMINATION/SEX-BASED WAGE DISCRIMINATION PURSUANT TO TITLE VII

57. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

58. Dr. Melerski is a female and is protected from sex discrimination by Title VII.

59. SVMHI has discriminated against Dr. Melerski by treating her differently from and less preferably than similarly situated male employees and subjecting her to discriminatory pay, discriminatory denials of pay raises, and other differential treatment on the bases of her sex.

60. Plaintiff was not paid compensation equal to that paid to male employees of equal skill, effort, and responsibility.

61. SVMHI's policies, practices, and/or procedures have had a disparate impact on Dr. Melerski with respect to the terms and conditions of her employment.

62. SVMHI violated federal law by permitting a work environment to exist that was discriminatory to Dr. Melerski, and other female SVMHI employees, and by wrongfully terminating Dr. Melerski.

63. SVMHI would not have terminated Dr. Melerski's employment, subjected Dr. Melerski to discriminatory pay, discriminatory denials of pay raises, or taken the other discriminatory actions against Dr. Melerski but for Dr. Melerski's

15

sex. Alternatively, Dr. Melerski's sex was a motivating factor in SVMHI's actions.

64. Because the actions of SVMHI supervisory employees were taken within the scope of their employment, SVMHI is responsible for their actions based upon the doctrine of *respondeat superior*.

65. As a direct and proximate result of the actions of SVMHI, Dr. Melerski has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

66. At all times material hereto, SVMHI engaged in a discriminatory practice or practices with malice or reckless indifference to the federally protected rights of Dr. Melerski so as to support an award of punitive damages.

67. The above-described acts by SVMHI constitute discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991 and the Lilly Ledbetter Fair Pay Act of 2009 ("Fair Pay Act"), as codified under 42 U.S.C. §§2000e, *et seq.* ("Title VII").

## COUNT II: RETALIATION PURSUANT TO TITLE VII

68. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

69. Dr. Melerski is protected from retaliation by Title VII.

70. SVMHI violated federal law by permitting a work environment to exist that was discriminatory to Dr. Melerski.

16

71. Dr. Melerski engaged in the protected activity of making numerous complaints about pay discrimination/disparate pay and was subsequently targeted and ultimately terminated from employment.

72. Dr. Melerski was unlawfully terminated from employment within short temporal proximity to her complaints and in direct retaliation for Dr. Melerski's complaints.

73. Because the actions of SVMHI supervisory employees were taken within the scope of their employment, SVMHI is responsible for their actions based upon the doctrine of *respondeat superior*.

74. SVMHI violated federal law by permitting a work environment to exist that punishes, retaliates against, and prejudices a victim of discrimination and for complaining of the same.

75. As a direct and proximate result of the actions of SVMHI, Dr. Melerski has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

76. At all times material hereto, SVMHI engaged in a retaliatory practice or practices with malice or reckless indifference to the federally protected rights of Dr. Melerski so as to support an award of punitive damages.

77. The above-described acts by SVMHI constitute retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991 and the Lilly Ledbetter Fair Pay Act of 2009 ("Fair Pay Act"), as codified under

17

42 U.S.C. §§2000e, *et seq.* ("Title VII").

## COUNT III:  SEX –BASED WAGE DISCRIMINATION PURSUANT TO THE EQUAL PAY ACT

78. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

79. Dr. Melerski is a female and is protected from sex discrimination pursuant to the Equal Pay Act, which is part of the Fair Labor Standards Act of 1938, as amended, and which prohibits sex-based wage discrimination between men and women in the same establishment who perform jobs that require substantially equal skill, effort and responsibility under similar working conditions.

80. Specifically, 29 U.S.C. §§206(d) prohibits sex discrimination as follows: "No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions . . ."

81. SVMHI has discriminated against Dr. Melerski by treating her differently from and less preferably than similarly situated male employees and subjecting her to discriminatory pay, discriminatory denials of pay raises, and other differential treatment on the bases of her sex. The significant differential pay

18

between Dr. Melerski and her male counterparts was not due to seniority, merit, quantity or quality of production, or a factor other than sex, but was due to Dr. Melerski's sex.

82. SVMHI provided Dr. Melerski with lower pay than similarly situated male colleagues on the basis of her sex, female, even though Dr. Melerski performed similar duties under similar working conditions that required the same skill, effort, education, experience and responsibility of male counterparts.

83. SVMHI's policies, practices, and/or procedures have had a disparate impact on Dr. Melerski with respect to the terms and conditions of her employment.

84. SVMHI violated federal law by permitting a work environment to exist that was discriminatory to Dr. Melerski, and other female SVMHI employees, and by wrongfully terminating Dr. Melerski.

85. SVMHI would not have terminated Dr. Melerski's employment, or taken the other discriminatory actions against Dr. Melerski but for Dr. Melerski's sex.

86. Because the actions of SVMHI supervisory employees were taken within the scope of their employment, SVMHI is responsible for their actions based upon the doctrine of *respondeat superior*.

87. SVMHI caused, attempted to cause, contributed to, or caused the continuation of wage rate discrimination based upon gender, in violation of the EPA, and this conduct constitutes a willful violation of the EPA within the meaning of 29 U.S.C. §255(a). Because SVMHI willfully violated the EPA, a three-year statute of limitations applies to such violations.

19

88. At all times material hereto, SVMHI engaged in willful discriminatory practice or practices to the federally protected rights of Dr. Melerski so as to support an award of liquidated damages and attorneys' fees pursuant to 29 U.S.C. §216(b).

89. As a direct and proximate result of the actions of SVMHI, Dr. Melerski has suffered and will continue to suffer pecuniary loss, including lost earnings, and emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

90. The above-described acts by SVMHI constitute discrimination in violation of the Equal Pay Act of 1963, as codified under 29 U.S.C. §§201 *et seq*. ("EPA").

## COUNT IV: RETALIATION PURSUANT TO THE EQUAL PAY ACT

91. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

92. Dr. Melerski is protected from retaliation by the Equal Pay Act.

93. SVMHI violated federal law by permitting a work environment to exist that was discriminatory to Dr. Melerski.

94. Dr. Melerski engaged in the protected activity of making numerous complaints about pay discrimination/disparate pay and was subsequently targeted and ultimately terminated from employment.

95. Dr. Melerski was unlawfully terminated from employment within short temporal proximity to her complaints and in direct retaliation for Dr. Melerski's complaints.

96. Because the actions of SVMHI supervisory employees were taken within the

20

scope of their employment, SVMHI is responsible for their actions based upon the doctrine of *respondeat superior*.

97. SVMHI violated federal law by permitting a work environment to exist that punishes, retaliates against, and prejudices a victim of discrimination and for complaining of the same.

98. SVMHI caused, attempted to cause, contributed to, or caused the continuation of wage rate discrimination based upon gender, and retaliated against Plaintiff when she complained of such discriminatory actions, all in violation of the EPA. This conduct constitutes a willful violation of the EPA within the meaning of 29 U.S.C. §255(a). Because SVMHI willfully violated the EPA, a three-year statute of limitations applies to such violations.

99. At all times material hereto, SVMHI engaged in willful discriminatory practice or practices to the federally protected rights of Dr. Melerski so as to support an award of liquidated damages and attorneys' fees pursuant to 29 U.S.C. §216(b).

100. As a direct and proximate result of the actions of SVMHI, Dr. Melerski has suffered and will continue to suffer pecuniary loss, including lost earnings, and emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

101. The above-described acts by SVMHI constitute retaliation in violation of the Equal Pay Act of 1963, as codified under 29 U.S.C. §§201 *et seq.*, 29 U.S.C. §215(a)(3) ("EPA").

## COUNT V: PREGNANCY DISCRIMINATION PURSUANT TO TITLE VII / THE PREGNANCY DISCRIMINATION ACT

21

102. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

103. Dr. Melerski is a female and is protected from sex discrimination by Title VII.

104. The Pregnancy Discrimination Act amends 42 U.S.C. §2000e [section 701], Title VII of the Civil Rights Act of 1964, and prohibits discrimination on the basis of pregnancy, childbirth, or related medical conditions.

105. Specifically, 42 U.S.C. §2000e (k) provides: "The terms 'because of sex' or 'on the basis of sex' include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment--related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work, and nothing in section 2000e-2(h) of this title [section 703(h)] shall be interpreted to permit otherwise."

106. SVMHI has discriminated against Dr. Melerski by treating her differently from and less preferably than similarly situated male employees and subjecting her to discrimination on the basis of her pregnancy and/or related medical conditions, and other differential treatment on the bases of her sex.

107. SVMHI violated federal law by permitting a work environment to exist that was discriminatory to Dr. Melerski and by wrongfully terminating Dr.

Melerski.

108.     SVMHI would not have terminated Dr. Melerski's employment, or taken the other discriminatory actions against Dr. Melerski but for Dr. Melerski's sex.     Alternatively, Dr. Melerski's pregnancy was a motivating factor in SVMHI's decision to termination Dr. Melerski.

109.     Because the actions of SVMHI supervisory employees were taken within the scope of their employment, SVMHI is responsible for their actions based upon the doctrine of *respondeat superior*.

110.     As a direct and proximate result of the actions of SVMHI, Dr. Melerski has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

111.     At all times material hereto, SVMHI engaged in a discriminatory practice or practices with malice or reckless indifference to the federally protected rights of Dr. Melerski so as to support an award of punitive damages.

112.     The above-described acts by SVMHI constitute sex and pregnancy discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act ("PDA"), the Civil Rights Act of 1991 as codified under 42 U.S.C. §§2000e, *et seq*. ("Title VII").

## COUNT VI: RETALIATION PURSUANT TO TITLE VII / THE PREGNANCY DISCRIMINATION ACT

113.     Plaintiff incorporates by reference herein the preceding paragraphs of

23

this Complaint.

114.     Dr. Melerski is protected from retaliation by Title VII/the PDA.

115.     SVMHI violated federal law by permitting a work environment to exist that was discriminatory to Dr. Melerski.

116.     Dr. Melerski engaged in the protected activity of advising her employer of her pregnancy and related health conditions and was subsequently targeted and ultimately terminated from employment.

117.     Dr. Melerski was unlawfully terminated from employment in direct retaliation for revealing her pregnancy and related health conditions and/or for requesting certain accommodations related to the same.

118.     Because the actions of SVMHI supervisory employees were taken within the scope of their employment, SVMHI is responsible for their actions based upon the doctrine of *respondeat superior*.

119.     SVMHI violated federal law by permitting a work environment to exist that punishes, retaliates against, and prejudices a victim of discrimination and for complaining of the same.

120.     As a direct and proximate result of the actions of SVMHI, Dr. Melerski has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

121.     At all times material hereto, SVMHI engaged in a retaliatory practice or practices with malice or reckless indifference to the federally protected rights

24

of Dr. Melerski so as to support an award of punitive damages.

122.    The above-described acts by SVMHI constitute retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act ("PDA"), the Civil Rights Act of 1991 as codified under 42 U.S.C. §§2000e, *et seq*. ("Title VII").

## COUNT VII:  RETALIATION PURSUANT TO THE ADA

123.    Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

124.    At all times relevant to the Complaint, Dr. Melerski was a qualified individual with a disability under the ADA.  Specifically, Dr. Melerski became pregnant with a "high risk" pregnancy which caused her to experience certain illnesses/related medical conditions, including but not limited to, severe and debilitating nausea, vomiting, and physical and mental fatigue.

125.    At all times relevant to the Complaint, Dr. Melerski could perform the essential functions of her position with or without an accommodation.

126.    Prior to Dr. Melerski's termination from employment, Dr. Melerski was performing her work at a satisfactory level and meeting or exceeding SVMHI's legitimate business expectations.

127.    Prior to her termination, Dr. Melerski revealed her pregnancy and asked for certain limited accommodations for the duration of her pregnancy. Dr. Melerski was retaliated against for revealing her pregnancy and requesting these reasonable accommodations.

25

128.    SVMHI would not have terminated Dr. Melerski or taken the other discriminatory/retaliatory actions against Dr. Melerski but for Dr. Melerski's pregnancy and/or her requests for reasonable accommodations. Indeed, Dr. Melerski's discharge from employment occurred under circumstances that raise a reasonable inference of unlawful discrimination and retaliation based upon Dr. Melerski's pregnancy and requests for reasonable accommodations.

129.    The reasons given for Dr. Melerski's termination from employment were pretextual.

130.    As a direct and proximate result of SVMHI's actions, Dr. Melerski has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

131.    At all times material hereto, SVMHI engaged in unlawful and retaliatory practices with malice or reckless indifference to the federally protected rights of Dr. Melerski so as to support an award of punitive damages.

132.    The above-described acts by Defendants and employees of Defendants constitute retaliation in violation of the Americans with Disabilities Act, as codified under Title 42 U.S.C. §§ 12101 *et seq.*, and the ADA Amendments Act of 2008 ("ADA").


WHEREFORE, Plaintiff Jennifer Elizabeth Melerski prays for judgment against Defendants Southern Virginia Mental Health Institute / Commonwealth of Virginia,

26

and Virginia Department of Behavioral Health and Developmental Services / Commonwealth of Virgin, and for equitable relief, compensatory damages, punitive and/or liquidated damages, together with prejudgment interest from the date of termination of the Plaintiff's employment, and for costs and attorneys' fees, and for such other and further relief as may be just and equitable.

TRIAL BY JURY IS DEMANDED

Respectfully submitted,

Thomas E. Strelka, Esq. (VSB# 75488)
L. Leigh R. Strelka, Esq. (VSB # 73355)
STRELKA LAW OFFICE, PC
Warehouse Row
119 Norfolk Avenue, S.W., Suite 330
Roanoke, VA 24011
Tel: 540-283-0802
thomas@strelkalaw.com
leigh@strelklaw.com

*Counsel for Plaintiff*

27